UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| BRIAN RUSSO, *et al.*,<br><br>       *Plaintiffs,*<br><br>   v.<br><br>GOVERNMENT EMPLOYEES INSURANCE<br>COMPANY,<br><br>       *Defendant.* | Civil Action No. 21-cv-<br>17234 (MEF)(JBC)<br><br><br>OPINION and ORDER |

## Table of Contents

I.   Background
  A.   The Case
  B.   The Lawyers' Motions to Withdraw
  C.   The Defendant's Motions to Dismiss
  D.   The Motions to Dismiss: Procedural Aspects
  E.   The Motions to Dismiss: The Court's Approach
II.   Evidence
  A.   November 2022 to April 2023: Attempted Contact
  B.   The Opt-In Plaintiffs Do Not Participate in Discovery
  C.   The Lawyers Withdraw
  D.   The Case Progresses Without the Opt-In Plaintiffs
III.   Rule 41
  A.   General Principles
  B.   Rule 41: Failure to Prosecute
IV.   Poulis Factors
  A.   Personal Responsibility

      1.   **While the Opt-In Plaintiffs Were Represented by the Lawyers**

      2.   **While the Opt-In Plaintiffs Were Proceeding Pro Se**

  B.   **Prejudice**

  C.   **History of Dilatoriness**

  D.   **Willfulness or Bad Faith**

  E.   **Effectiveness of Alternative Sanctions**

  F.   **Meritoriousness of the Claims**

V.   **Conclusion and Next Steps**

\*     \*     \*

An employee claimed his employer did not properly pay him for the hours he worked.

The employee sued, and other employees later joined the case.

The employer now moves to dismiss certain employees who joined the lawsuit, because they have not actively participated in it.

The motions will be granted for the reasons described below, if the employees do not contact the Court within 30 days.

\*     \*     \*

I.   **Background**

  A.   **The Case**

An employee sued his employer in September of 2021.[1]  The employer is referred to as the "Defendant."[2]

The employee sued under various laws, including the Fair Labor Standards Act.

---

[1]  The employee is Brian Russo.

[2]  The Defendant is Government Employees Insurance Company, Inc., d/b/a GEICO.

During August of 2022, the Court conditionally certified a collective action.[3]  This allowed certain people who worked for the Defendant to be notified of their right to join the lawsuit.

During October and November of 2022, 17 current or former employees of the Defendant "opted in" and joined the case.

### B.   The Lawyers' Motions to Withdraw

Five of the 17 opt-in plaintiffs did not meaningfully get or keep in touch with their lawyers ("the Lawyers"[4]) over a period of months.  See Part II.A and Part II.B below.

The Lawyers moved to withdraw from representing these 5 opt-in plaintiffs, and the Court granted the motions.

The 5 opt-in plaintiffs are referred to from here as the "Opt-In Plaintiffs."[5]

### C.   The Defendant's Motions to Dismiss

During June of 2023,[6] the Defendant moved to dismiss the Opt-In Plaintiffs.[7]

The Defendant's core argument: by their non-participation, the Opt-In Plaintiffs have essentially walked away from this case,

---

[3]  This is a lawsuit "by . . . employees for and in behalf of . . . themselves and other employees similarly situated."  29 U.S.C. § 216(b).  To go forward, a collective action must be certified by the Court.  See Halle v. W. Penn Allegheny Health Sys. Inc., 842 F.3d 215, 224-25 (3d Cir. 2016).

[4]  All of the plaintiffs in this case have been represented by the same lawyers.

[5]  The Opt-In Plaintiffs are: Daniel Capilla, Scott Hall, Blondine Ladouceur, Amy Paz, and Lewis Schepacarter.

[6]  This case was reassigned to the undersigned in late May 2023.

[7]  There are two motions to dismiss.  One is directed at Capilla, the other at the remaining Opt-In Plaintiffs. The two motions to dismiss are considered together here.  This is allowed.  See, e.g., Dawidoicz v. Rutgers Univ., 2022 WL 17094833, at *1 (D.N.J. Nov. 21, 2022).

and they should therefore be dismissed from it for "failure to prosecute."

The Defendant's motions are now before the Court.

Before getting to them, consider some brief additional procedural history.

### D.   The Motions to Dismiss: Procedural Aspects

Since the motions to dismiss were filed, two main things have happened.

First, because the Lawyers had reported it was difficult to get in touch with the Opt-In Plaintiffs, the Court convened a status conference during July 2023, with an eye to ensuring the Defendant's motions to dismiss the Opt-In Plaintiffs had been properly served.

Following the conference, the Defendant took certain additional steps.  The service appears sufficient.[8]

Second, because of the possibility that the Opt-In Plaintiffs wanted to stay in the case, but did not want to interact with the Lawyers, the Court sought to directly communicate with the Opt-In Plaintiffs.  The Court issued an order to the Opt-In Plaintiffs indicating that motions to dismiss were pending, and that if they wanted to remain in the case they should call or write the Clerk of Court by a particular date.  See Order,

---

[8]  "Once a certificate of service is filed asserting that a pleading was properly addressed, had sufficient postage, and was served by being placed in the U.S. mail, a presumption of regularity arises that the addressee received the pleading." Hanna v. Sec'y of U.S. Dep't of Agric., 812 F. App'x 104, 105 (3d Cir. 2020) (cleaned up).  Here, the Defendant's supplemental certificates of service attest that the motions to dismiss were conveyed to each of the Opt-In Plaintiffs' last known addresses, with sufficient postage and via United States mail.  See Certification of Grethel Rubio ¶ 2, July 27, 2023; Certification of Jennifer Davila ¶ 2, July 27, 2023.  This establishes a presumption that the Opt-In Plaintiffs received the motion. There has been no effort to rebut it.

November 3, 2023.[9]  That date recently passed.  There has been no response.

### E.    The Motions to Dismiss: The Court's Approach

The Court analyzes the motions to dismiss in three steps.

First, the Court sets out the evidence as to the nature of the Opt-In Plaintiffs participation in this case.  See Part II.

Second, the Court asks: have the Opt-In Plaintiffs failed to prosecute, such that they may they be dismissed from this case? The Court's answer: yes.  See Part III.

Third, the Court concludes that the Opt-In Plaintiffs will be dismissed from this case, but only if they do not contact the Court within 30 days.  See Part IV.

## II.  Evidence

As noted above, the Opt-In Plaintiffs joined this lawsuit during September and October of 2022.

Part II.A covers the period from November 2022 to April of 2023, when the Lawyers tried (and largely failed) to stay in touch with the Opt-In Plaintiffs.

During that period, Part II.B notes, the Opt-In Plaintiffs failed to participate in discovery.  They did not sit for depositions, produce documents, or answer interrogatories.

Part II.C covers the period during which the Lawyers withdrew from representing the Opt-In Plaintiffs.

Part II.D covers the period after the Lawyers withdrew, and tracks the overall progress of this case.

### A.    November 2022 to April 2023: Attempted Contact

Soon after the Opt-In Plaintiffs joined the lawsuit, the Lawyers emailed a letter to each of them.  The emails were sent between November 16 and November 23 of 2022.[10]  See Plaintiff's Status

---

[9]  The Order was sent by certified mailed to each of the Opt-In Plaintiffs.  A copy of the Order is attached here as Appendix A.

[10]  Throughout Part II, there are references to efforts by the Lawyers to contact the Opt-In Plaintiffs by email, phone, and mail.  The contact information used for these purposes was

Report, November 9, 2022 ("Plaintiff's Status Report") ¶¶ 15.i-ii, 16.i-ii, 17.i-ii, 18.i-ii, 19.i-ii.

The letter explained the Opt-In Plaintiffs' "responsibilities []
as an . . . Opt-In litigant in this matter," provided "counsel's
contact information [and] proposed deposition dates,"
"warned . . . of the risks of failing to communicate with
undersigned counsel, including risking [their] continued
participation in this matter," and requested responses to
document requests and interrogatories. See id. at ¶¶ 15.iii-iv,
16.iii-iv, 17.iii-iv, 18.iii-iv, 19.iii-iv.

None of the Opt-In Plaintiffs responded to the letter. See id.
at ¶¶ 15.v, 16.v, 17.v, 18.v, 19.v.

At roughly the same time, the Lawyers called the Opt-In
Plaintiffs and left each a voicemail message. See id. ¶¶ at
15.vi-vii, 16.vi-vii, 17.vi-vii, 18.vi-vii, 19.vi-vii.

None of the Opt-In Plaintiffs responded. See id. at ¶¶ 15.viii,
16.viii, 17.viii, 18.viii, 19.viii.

As to three of the five Opt-In Plaintiffs, Amy Paz, Scott B.
Hall, and Lewis Shepacarter, the Lawyers again left a voicemail
message. See id. at ¶¶ at 15.x, 17.x, 18.x. There was again no
response. See id. at ¶¶ at 15.xi, 17.xi, 18.xi.

As to a fourth Opt-In Plaintiff, Blondine Ladouceur, the Lawyers
reached her by phone on November 16, 2022 and spoke to her. See
id. at ¶ 16.ix. One of the Lawyers conveyed that her deposition
had been scheduled. See id. Following up between November 16
and December 8 of 2022, the Lawyers left "several" voicemail
messages, sent 3 text messages, and sent 1 email. See id. at
¶ 16.xi-xx. There was no response. See id.

As to the remaining Opt-In Plaintiff, Daniel Paul Capilla,
between November 23 and December 8, the Lawyers placed "several"
additional telephone calls and left voicemail messages. See id.
at ¶ 19.xi. Mr. Capilla did not respond. See id. at ¶ 19.xii.

Given all this, on December 8, 2022, the Lawyers sent via email
and first-class mail a letter to each of the five Opt-In

provided by the Defendant and then verified and supplemented
when necessary by the Lawyers via public records and electronic
database searches. See Plaintiff's Status Report ¶¶ 15.ii,
16.ii, 17.ii, 18.ii, 19.ii, 20.

Plaintiffs.  See id. at ¶¶ 15.xii-xiii, 16.xxi-xxii, 17.xii-
xiii, 18.xii-xiii, 19.xii-xiii.

The letter notified the Opt-In Plaintiffs that the Lawyers had
tried to contact them; that that they needed to communicate with
the Lawyers; that failure to communicate risked the Lawyers'
continued participation in the matter; and that the Lawyers
would file a motion to withdraw in 10 days if the Opt-In
Plaintiffs had still not contacted counsel.  See Plaintiff's
Status Report ¶¶ 15.xiii, 16.xxii, 17.xiii, 18.xiii, 19.xiii;
see, e.g., Motion to Withdraw, Ex. 1, June 22, 2023.

Four of the Opt-In Plaintiffs did not respond to the letter.
See id. at ¶¶ at 15.xiv, 16.xxiii, 17.xiv, 18.xiv.

The remaining Opt-In Plaintiff, Mr. Capilla, participated in two
telephone conversations with the Lawyers on December 16, 2022
and December 20, 2022.  See id. at ¶ 19.xiv-xv.  But after these
conversations, he failed to respond to further communication
from the Lawyers.  See id. at ¶ 19.xvi-xix.  They sent another
letter indicating their intent to move to withdraw if they did
not hear from Mr. Capilla in 10 days.  See id. at ¶ 19.xx-xxi.
He did not respond.  See id. at ¶ 19.xxii.

### B.   The Opt-In Plaintiffs Do Not Participate in Discovery

While all of this was going on, the case was in discovery.

The parties had agreed that all Plaintiffs would be deposed and,
one week before sitting for their depositions, would be required
to produce certain documents and respond to interrogatories.
See Plaintiff's Status Report ¶ 12; Declaration of Paul D.
Burgin, December 1, 2023 ("Declaration of Paul Burgin") ¶ 3, 5.

The Opt-In Plaintiffs had depositions scheduled on December 12,
2022, December 15, 2022, February 1, 2023, and February 2, 2023.
See Plaintiff's Status Report ¶¶ 15.ix, 16.ix, 17.ix, 18.ix,
19.ix; Declaration of Paul Burgin ¶¶ 4, 6, 8, 13.

The Opt-In Plaintiffs were told about these depositions.  See
Plaintiff's Status Report ¶¶ 15.iii, 16.iii, 17.iii, 18.iii,
19.iii; Declaration of Paul Burgin ¶ 6.

But the Lawyers were largely unable to get the attention of
their clients, and the depositions did not go forward.  See
Declaration of Paul Burgin ¶¶ 11, 13, 14.  Similarly, the Opt-In
Plaintiffs never produced documents or responded to
interrogatories.  See Declaration of Paul Burgin ¶¶ 10, 13, 14.

### C.   The Lawyers Withdraw

In January of 2023, the Lawyers moved to withdraw from representing four of the five Opt-In Plaintiffs.  See Motion, January 9, 2023.  The Court granted the motion in March of 2023.  See Order, March 16, 2023.

In June of 2023, the Lawyers moved to withdraw from representing the fifth of the five Opt-In Plaintiffs, Daniel Capilla.  See Motion, June 22, 2023.  The Court granted the motion in June of 2023.  See Order, June 28, 2023.

Since then, it has been more of the same.  The Opt-In Plaintiffs have not reached out to their former lawyers.  See Declaration of Thomas Eiler, December 7, 2023 ("Declaration of Thomas Eiler") ¶ 26.  They have not, for example, indicated a desire to continue with this case pro se, or with the assistance of other lawyers.  See Motion to Dismiss, Yang Declaration ¶ 3, June 15, 2023; Motion to Dismiss, Yang Declaration ¶ 3, June 23, 2023.  And they did not respond to the Court's order of November 3, 2023.  See Order, November 3, 2023.

### D.   The Case Progresses Without the Opt-In Plaintiffs

As set out above, the Lawyers were unable to stay in touch with the Opt-In Plaintiffs, and the Lawyers' motions to withdraw were granted.

Meanwhile, the underlying case moved forward.  Discovery pressed on, and then was closed.  See Motion to Dismiss, Yang Declaration ¶ 4, June 15, 2023; Motion to Dismiss, Yang Declaration ¶ 4, June 23, 2023.  The parties narrowed the case, stipulating to some plaintiffs being dismissed.  See, e.g., Stipulation and Orders, December 12, 2022, February 17, 2023, March 16, 2023.  Mediation was undertaken.  See Plaintiff's Status Report ¶¶ 23-24.  And finally, during June of 2023, the parties jointly moved for approval of a proposed settlement.  See Motion, June 30, 2023.

Throughout all this, the Opt-In Plaintiffs were not meaningfully involved.  See Part II.A and Part II.B.

## III. Rule 41

### A.   General Principles

The Defendant has moved, as noted, to dismiss the Opt-In Plaintiffs.  The motion is made under Federal Rule of Civil

8

Procedure 41(b).  It provides: "[i]f the plaintiff fails to prosecute . . . , a defendant may move to dismiss the action[.]" Fed. R. Civ. P. 41(b).

In determining whether to grant a Rule 41(b) motion, the Court engages in a two-step analysis.

First, the Court determines whether the plaintiffs have indeed "fail[ed] to prosecute" their case.

If yes, the Court moves on to the second step, and analyzes a number of distinct factors.  See Hildebrand v. Allegheny Cnty., 923 F.3d 128, 132 (3d Cir. 2019).  These were articulated in Poulis v. State Farm Fire & Cas. Co., 747 F.2d 863, 868 (3d Cir. 1984), and are often referred to as the "Poulis factors."

As to the first step, the Court concludes in Part III.B below that the Opt-In Plaintiffs have failed to prosecute.

As to the second step, the Court concludes in Part III.C below that the Poulis factors suggest the motion to dismiss the Opt-In Plaintiffs can now be granted.

## B.   **Rule 41: Failure to Prosecute**

"Fail[ure] to prosecute" can be purely passive, as when a plaintiff "does nothing" on a persistent-enough basis.  See Adams v. Trustees of the N.J. Brewery Emps.' Pension Trust Fund, 29 F.3d 863, 875 (3d Cir. 1994) (cleaned up).

The determination that "simple inaction" by a plaintiff, 8 Moore's Federal Practice – Civil § 41.51 (2023), counts as a Rule 41 failure to prosecute requires "a full understanding of the surrounding facts and circumstances[.]"  Briscoe v. Klaus, 538 F.3d 252, 258 (3d Cir. 2008); see also In re Asbestos Prod. Liab. Litig. (No. VI), 718 F.3d 236, 246 (3d Cir. 2013) ("No precise rule can be laid down as to what circumstances justify a dismissal for failure to prosecute, but the procedural history of each case must be examined in order to make that determination.") (cleaned up).

In Part II, the Court laid out the evidence as to "the surrounding facts and circumstances," Briscoe, 538 F.3d at 258, and concluded the Opt-In Plaintiffs took virtually no action in this litigation after joining it, and did not participate in discovery.

This is "failure to prosecute," and the Court therefore moves on, in the next section, to an analysis of the <u>Poulis</u> factors. <u>See</u> <u>Briscoe</u>, 538 F.3d at 258.[11]

## IV.  **Poulis Factors**

As set out above, the Opt-In Plaintiffs failed to prosecute.  To determine whether the "drastic sanction," <u>Poulis</u>, 747 F.2d at 867-68, of dismissal is warranted, the Court now considers the <u>Poulis</u> factors.

The factors:

> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

<u>Hildebrand</u>, 923 F.3d at 132.

Take each in turn.

---

[11]  There are certain circumstances in which there is no need to measure out the <u>Poulis</u> factors.  For example: "when a litigant's conduct makes adjudication of the case impossible, . . . balancing under <u>Poulis</u> is unnecessary." <u>Sebrell ex rel. Sebrell</u> v. <u>Phila. Police Dep't</u>, 159 F. App'x 371, 374 (3d Cir. 2005). But that is not this case.  A <u>Poulis</u> analysis can sometimes also be skipped when a plaintiff has un-mistakeably, though implicitly, made it clear that they simply do not want to continue with their case.  <u>See</u> <u>Spain</u> v. <u>Gallegos</u>, 26 F.3d 439, 455 (3d Cir. 1994); <u>Baker</u> v. <u>Accts. Receivables Mgmt., Inc.</u>, 292 F.R.D. 171, 175 (D.N.J. 2013).  This is somewhat analogous to an "open and voluntary renunciation of [the plaintiff's] suit," 3 W. Blackstone, Commentaries on the Laws of England 296 (1768), and does not trigger a <u>Poulis</u> assessment.  But again, this has little to do with the situation here.

## A.   **Personal Responsibility**

The first factor: the plaintiff's "personal responsibility for the . . . inaction" in question.  <u>Adams</u>, 29 F.3d at 873.

This factor sorts between "inaction" that is the plaintiff's fault and "inaction" that is the lawyer's.  See <u>id</u>.

If "inaction" is the plaintiff's fault, it makes more sense for the plaintiff to bear the consequences.

By contrast, if a lawyer's neglect is why a case is not moving forward, that may be a reason for the Court to goad the lawyer to get down to work, perhaps by imposing sanctions.  But if the problem is the lawyer, that is not, except in highly unusual circumstances, a reason to hurt the lawyer's client, by dismissing the client's case.  See <u>Hildebrand</u>, 923 F.3d at 133; <u>see also</u> <u>Carter</u> v. <u>Albert Einstein Med. Ctr.</u>, 804 F.2d 805, 807 (3d Cir. 1986); <u>see also</u> <u>Adams</u>, 29 F.3d at 873.

Against this backdrop, consider the Opt-In Plaintiffs' "personal responsibility" for the period when they were represented by the Lawyers, <u>see</u> III.B.1 below, and for the period when they were not, <u>see</u> III.B.2 below.

### 1.   **While the Opt-In Plaintiffs Were Represented by the Lawyers**

From when they joined the case until the Lawyers' motions to withdraw were granted (in March and June 2023), the Opt-In Plaintiffs were represented.

For much of this period, the case was in discovery.

But as noted above, <u>see</u> Part II.C, no discovery related to the Opt-In Plaintiffs went forward.  Interrogatories to reflect the Opt-In Plaintiffs' experience were not answered.  <u>See</u> Declaration of Paul Burgin ¶¶ 11, 13, 14.  Documents were not collected from the Opt-In Plaintiffs and produced to the Defendant.  <u>See</u> <u>id</u>.  And the Opt-In Plaintiffs did not sit for their scheduled depositions.  <u>See</u> <u>id</u>.

None of this appears to have been the Lawyers' fault.  The Lawyers worked systematically to contact the Opt-In Plaintiffs. But as detailed in Part II, repeated emails went unanswered, and voicemails were left but were not returned.  And there was no change after the Lawyers sent a letter to the Opt-In Plaintiffs

11

emphasizing that the consequences of non-responsiveness could be serious, and that time to respond was running out.

Given the Lawyers' efforts, the Opt-In Plaintiffs' "fail[ure] to prosecute," Fed. R. Civ. P. 41(b), was their "personal responsibility," Adams, 29 F.3d at 873, even for the period when they were represented by counsel.[12]

To be sure, plaintiffs in a collective action such as this one,[13] may sometimes have less to do than plaintiffs in a traditional action.   In a collective action, for example, information may be gathered by sampling, see Ivanovs v. Bayada Home Health Care, Inc., 2023 WL 3644637, at *7 (D.N.J. May 25, 2023), and by definition, not everyone is always sampled.   Some plaintiffs may not be asked for information.

But not here.

The Opt-In Plaintiffs were called upon to provide information about their experiences in depositions and interrogatories, and by turning over documents.   These tasks were necessarily personal.   They required personal participation.   And these tasks were at the core of what the Opt-In Plaintiffs were expected to do in this case.   But the Opt-In Plaintiffs did not

---

[12]  See, e.g., Dawson v. Cumberland Cnty. Jail, 2023 WL 6533464, at *2 (D.N.J. Oct. 6, 2023) ("personal responsibility" of represented plaintiff when counsel made multiple phone call attempts and sent mail to the plaintiff, but the plaintiff failed to contact the court or his lawyer, or to respond to an order to show cause); Lambert v. Jariwala & Co., LLC, 2023 WL 1883354, at *3 (D.N.J. Feb. 10, 2023) ("personal responsibility" of represented opt-in plaintiffs when their counsel attempted to obtain discovery response and the plaintiffs failed to respond to discovery requests); Khordi v. Target Corp., 2011 WL 6372322, at *1 (D.N.J. Dec. 2, 2011), report and recommendation adopted, 2011 WL 6399471 (D.N.J. Dec. 19, 2011) ("personal responsibility" of represented plaintiff when counsel "reached out several times" and explained the consequences of failure to respond, and the plaintiff still failed to contact the lawyer); cf. Rivet v. Off. Depot, Inc., 2015 WL 9308246, at *4 (D.N.J. Dec. 22, 2015) ("personal responsibility" of represented opt-in plaintiffs when their counsel received multiple letters regarding their failure to respond, the court ordered them to respond, and the opt-in plaintiffs still did not respond to discovery requests or sit for depositions).

[13]  See footnote 3 above.

do them, in spite of apparently persistent efforts from the Lawyers.[14]

### 2.   While the Opt-In Plaintiffs Were Proceeding Pro Se

After the Lawyers' motions to withdraw were granted, the Opt-In Plaintiffs did not hire new lawyers.  They went <u>pro se</u>.  When a plaintiff is <u>pro se</u>, "[i]t is logical to hold [the plaintiff] personally responsible for delays in his case because a <u>pro se</u> plaintiff is solely responsible for the progress of his case, whereas a plaintiff represented by counsel relies, at least in part, on his or her attorney."  <u>Briscoe</u>, 538 F.3d at 258-59.[15]

---

[14]  As here, opt-in plaintiffs generally join a case on which lawyers are already working away.  This may potentially lessen opt-in plaintiffs' personal responsibility for the actions of their lawyers.  <u>Cf.</u> <u>Link</u> v. <u>Wabash</u>, 370 U.S. 626, 633-34 (1962) (upholding dismissal of a case in light of lawyer's non-appearance at a court conference in part because the plaintiff "voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent").  Similarly, if an opt-in plaintiff is one of hundreds or thousands of people in a collective action, that, too, might well limit the plaintiff's personal responsibility for the lawyer's actions.  In a large group of plaintiffs, it can sometimes be hard for any individual plaintiff to exert meaningful control over their lawyer.  <u>Compare</u> <u>Link</u>, 370 U.S. at 633-34 (upholding dismissal of a traditional civil action in light of the principal-agent relationship that makes the principal, the plaintiff, responsible for certain actions of the agent, the principal's lawyer), <u>with</u> <u>In re Cendant Corp. Litig.</u>, 264 F.3d 201, 255 (3d Cir. 2001) (noting in the class action context there can be "reason to fear that class counsel will be highly imperfect agents for the class").  But none of this is relevant in this case.  The Opt-In Plaintiffs are not being made "personally responsible" for the Lawyers' actions.  Rather, the Opt-In Plaintiffs are responsible here solely for their own actions, including their failure to appear at their depositions, and to provide relevant information through interrogatories or document production.

[15]  <u>See also</u> <u>Hoxworth</u> v. <u>Blinder, Robinson & Co.</u>, 980 F.2d 912, 920 (3d Cir. 1992) ("This is not a situation where we must allocate responsibility between the parties and their counsel.

This principle applies here.  There is no reason to discount it.

For example, there is no reason to think the pro se Opt-In Plaintiffs were not aware they might be dismissed if they did not participate.  The Court has, itself, sought to convey that to the Opt-In Plaintiffs.  See Appendix A.  And since becoming pro se, the Opt-In Plaintiffs have continued to receive notice of pending motions.  See Motions to Dismiss, Certificates of Service, June 15, 2023 and June 23, 2023; Letters, July 27, 2023 and August 11, 2023.

Moreover, there is no reason to believe the Opt-In Plaintiffs have temporarily gone dark as they think through how to proceed and whether to look for new lawyers.  Upon filing their motions to withdraw as counsel, the Lawyers sent each Opt-In Plaintiff a letter.  It read in part: "In the event that our firm withdraws, you must either: (1) have another attorney enter his/her appearance on your behalf with the Court, or (2) notify the Clerk of the Court in writing that you will represent yourself, pro se."  See Motion to Withdraw, January 9, 2023, Exs. 1-4 (Letters to Amy Paz, Blondine Ladouceur, Scott Hall, and Lewis Shepacarter); Motion to Withdraw, June 22, 2023, Ex. 1 (Letter to Daniel Capilla).  But no attorney has made an appearance, and the docket reflects no communication with the Clerk of Court.

In short, the Opt-In Plaintiffs are "personal[ly] responsib[le]" for the period during which they have been pro se, just as they were when represented by the Lawyers.  Adams, 29 F.3d at 873.

**B.    Prejudice**

The second Poulis factor is prejudice to the Defendant, and evidence of prejudice "bear[s] substantial weight in support of a dismissal[.]"  Adams, 29 F.3d at 875-74.

"Prejudice" in this context "does not mean irremediable harm, [but] the burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy[.]"  Ware

---

Defendants had personal responsibility for the conduct of the litigation after their attorney withdrew[.]"); see also Emerson v. Thiel Coll., 296 F.3d 184, 190 (3d Cir. 2002) (upholding failure-to-prosecute dismissal where district court found that because plaintiff was proceeding pro se, his "failure to comply with its orders could not be blamed on counsel"); accord, e.g., Yancey v. Wal-Mart Corp., 2022 WL 972489, at *6 (D.N.J. Jan. 31, 2022).

v. Rodale Press, Inc., 322 F.3d 218, 222 (3d Cir. 2003) (cleaned up).  Such prejudice includes "deprivation of information through non-cooperation with discovery."  Adams, 29 F.3d at 874.[16]

Here, discovery was completed more than eight months ago, and the Opt-In Plaintiffs failed to participate.  This "deprivation of information," Adams, 29 F.3d at 874 (cleaned up), would have impeded the Defendant's ability to prepare for trial as to the Opt-In Plaintiffs.  This counts as prejudice.[17]

Another form of prejudice: a plaintiff's lack of participation in discovery can make it hard to value their claims, and this can slow down the settlement process.[18]

---

[16]  See also, e.g., Lambert, 2023 WL 1883354, at *3 ("The failure by these [opt-in] [p]laintiffs to participate in discovery is certainly prejudicial to Defendants, as it affects Defendants' ability to defend this case."); Johnson v. Wave Comm GR LLC, 2013 WL 992511, at *4 (N.D.N.Y. Jan. 29, 2013), report and recommendation adopted, 2013 WL 992186 (N.D.N.Y. Mar. 13, 2013) ("[D]elays [in responding to discovery requests] have prejudiced . . . the defendants in their ability to mount a timely and cost-effective defense to the action[.]"); Bernabe v. Giant Big Apple Beer LTD., 2007 WL 4573873, at *6 (E.D.N.Y. Dec. 26, 2007) ("The failure of the missing plaintiffs to appear for their noticed depositions has thwarted and prejudiced defendants' efforts to obtain discovery and defend against their claims.").

[17]  In collective actions such as this one, not being able to learn about variations in job duties among plaintiffs can sometimes prejudice defendants --- by depriving them of information they need to seek to decertify the collective action.  See, e.g., Rivet, 2015 WL 9308246, at *4 (finding prejudice when plaintiffs did not participate in discovery because individual information may be "dispositive of certain opt-ins' claims"); Roseman v. Bloomberg, L.P., 2017 WL 1287138, at *4 (S.D.N.Y. Apr. 4, 2017) ("The Non-Responsive Plaintiffs' failure to respond to Bloomberg's discovery requests necessarily deprived Bloomberg of an opportunity to uncover further variations, which, in turn, could have strengthened Bloomberg's argument to decertify the opt-in class.").

[18]  See, e.g., Herrera v. Live Oak Landscape Contractors, Inc., 2022 WL 2276743, at *2 (D.N.J. Apr. 20, 2022), report and recommendation adopted, 2022 WL 2276707 (D.N.J. June 22, 2022) ("[P]laintiff's refusal to sign the settlement agreement and

That is the case here.  This case has progressed to the cusp of settlement. Discovery was closed, certain parties were voluntarily dismissed, mediation was pursued, and a settlement agreement has now been reached and presented to the Court for approval.  See Plaintiff's Status Report ¶¶ 23-24; Motion, June 30, 2023.

But the Court's consideration of the merits of the settlement agreement is difficult at this point.  The Opt-In Plaintiffs are, for now, a part of this case.  But they have not participated in discovery.  And moreover, they have not been in touch with the Lawyers or with the Court.  This means that, because of their own inaction, the Opt-In Plaintiffs did not participate in discussions about whether the settlement agreement is or is not wise.  See Plaintiffs' Status Report ¶¶ 23-26.  Settlement here might in the end benefit the Defendant (with finality) and the plaintiffs (with financial recoveries).  But the Court's assessment of settlement has been kicked down the road.  The inaction of the Opt-In Plaintiffs has made it unclear whether they want to stay in the case, and therefore whether they might have a role to play in weighing in on the proposed settlement.  This settlement delay is also prejudice.

The second Poulis factor weighs in favor of dismissal.

---

participate in case management conferences as directed has prejudiced defendants by leaving them in limbo where they cannot finalize a settlement that was agreed to months ago, move to enforce the settlement so the action can be resolved, or cause the action to proceed and defend themselves against the wage claims."); Fernandez v. Brownstone House Inc., 2014 WL 495126, at *1 (D.N.J. Feb. 4, 2014) ("[An] analysis of the Poulis factors supports dismissal" where "Defendants have already reached settlements with every other former plaintiff."); cf. C-Pod Inmates of Middlesex Cnty. Adult Correction Ctr. v. Middlesex Cnty., 2018 WL 4006809, at *5 (D.N.J. July 31, 2018), report and recommendation adopted, 2018 WL 4005749 (D.N.J. Aug. 22, 2018) (finding prejudice where plaintiff stopped participating in the case "just when it appeared that a full resolution had been reached"); McNulty v. Middle E. F., 2020 WL 7769737, at *5 (E.D. Pa. Dec. 30, 2020) (finding prejudice where plaintiff's action stalled settlement negotiations); Johnson, 2013 WL 992511, at *4, report and recommendation adopted, 2013 WL 992186 ("[D]elays [in responding to discovery requests] have prejudiced not only the defendants . . . but also the other plaintiffs by delaying their action for civil relief.").

C.   **History of Dilatoriness**

The third Poulis factor is a history of dilatoriness.  See
Adams, 29 F.3d at 874 (citing Poulis, 747 F.2d at 868).

"Extensive or repeated delay or delinquency constitutes a
history of dilatoriness, such as consistent non-response to
interrogatories, or consistent tardiness in complying with court
orders."  Adams, 29 F.3d at 874 (citing Poulis, 747 F.2d at
868).  "[C]onduct that occurs one or two times is insufficient
to demonstrate a 'history of dilatoriness.'"  Briscoe, 538 F.3d
at 261 (citing Scarborough v. Eubanks, 747 F.2d 871, 875 (3d
Cir. 1984)).  But a meaningful period of delay counts.  See,
e.g., Emerson, 296 F.3d at 191 (16 months); Lambert, 2022 WL
2439861, at *2, report and recommendation adopted, 2023 WL
1883354 (14 months); DirecTV, Inc. v. Needleman, 2006 WL
8457148, at *4 (D.N.J. Feb. 24, 2006) (27 months); Rivet, 2015
WL 9308246, at *4 (approximately 16 months).

Here, this factor favors dismissing the Opt-In Plaintiffs.

In absolute terms, the Opt-In Plaintiffs' "delay or delinquency"
has been somewhat "[e]xtensive" and "repeated."  See Adams, 29
F.3d at 874-75.  No Opt-In Plaintiff has been heard from in
nearly a year.

Measured in relative terms, the period of the Opt-In Plaintiffs'
"dilatoriness" has been more substantial yet.  For virtually the
entire period since they first joined the case, the Opt-In
Plaintiffs have done little or nothing.  And during the 13 or so
months since they signed on to it, the case has come and all-but
gone.  Discovery was closed about eight months ago.  And the
parties have reached a proposed settlement agreement, apparently
without involvement from the Opt-In Plaintiffs.

In short: the Absent Opt-In Plaintiffs' history of "non-
response" supports dismissing them.  See Adams, 29 F.3d at 874-
75.

D.   **Willfulness or Bad Faith**

The fourth Poulis factor is willful or bad faith conduct.  See
Adams, 29 F.3d at 874 (citing Poulis, 747 F.2d at 868).

Here, there is no clear indication of an "intentional or
self-serving," Poulis, 747 F.2d at 868, act of willfulness or
bad faith by the Opt-In Plaintiffs.

Willfulness and bad faith can sometimes be inferred where there
is an "[a]bsence of reasonable excuses" for repeated failures to
participate appropriately in a case.  See Roman v. City of
Reading, 121 F. App'x 955, 960 (3d Cir. 2005); see also, e.g.,
id. (affirming trial court where it "suggested that . . .
failure to offer any substantiated, adequate excuses for their
shortcomings for the sheer quantity of dilatory conduct was
particularly telling of bad faith") (cleaned up).

Here, though, the Court declines to make such an inference.

Inferring willfulness or bad faith can make sense where the
plaintiff ignores direct court orders to, for example,
participate in discovery.[19]

But that is not this case.

The Opt-In Plaintiffs failed to participate in discovery.  But
while the Court established discovery deadlines that applied
across the board, the Opt-In Plaintiffs do not appear to have
been directly ordered to themselves appear for a particular
deposition or to produce certain documents.

An inference of bad faith can also be justified when the
plaintiff's dilatoriness all-but makes a case screech to a stop,
with the prospect of liability for the defendant hanging in the
air, but with no sense of when the case might get re-started and
press on to resolution.  "Only [t]he [plaintiff] can take steps
to prosecute the case," Dickens v. Danberg, 700 F. App'x 116,

---

[19]  See Cox v. United Parcel Serv., Inc., 753 F. App'x 103, 106
(3d Cir. 2018) ("The District Court repeatedly warned Cox that
his case would be dismissed unless he provided complete
discovery responses.  Despite those warnings, Cox never
responded adequately.  He failed to obey repeated court orders
and to provide requested discovery, and offered no plausible
explanation for his noncompliance.  All of those failures evince
willfulness."); Chanel, Inc. v. Gordashevsky, 2006 WL 8457203,
at *3 (D.N.J. Oct. 11, 2006) (accepting the argument that
"[d]efendant's failure to comply with Court orders and failure
to respond at all to discovery requests demonstrates bad
faith"); Rivet, 2015 WL 9308246, at *5 (finding willfulness
where opt-in plaintiffs "expressly flouted [a] court order"
warning they might be dismissed if they failed to engage in
discovery); cf. DirecTV, Inc., 2006 WL 8457148, at *4
("Defendant's repeated failure to observe Court-imposed
deadlines and inability or unwillingness to provide a reasonable
excuse for said failures constitutes bad faith.").

118 (3d Cir. 2017), and when the plaintiff does not do so, the defendant is left in limbo with the uncertainty, costs, and stress that entails.  Id.

But that, too, is not this case.

The Opt-In Plaintiffs have largely not participated.  But this case has nonetheless moved toward conclusion.  As noted, for example, a proposed settlement agreement has been reached.

In short: there is no willfulness or bad faith here, and this Poulis factor therefore does not weigh in favor of dismissal.

### E.   Effectiveness of Alternative Sanctions

The fifth Poulis factor is the effectiveness of alternative sanctions.  See Adams, 29 F.3d at 874 (citing Poulis, 747 F.2d at 868).

Alternative sanctions (fines are an example) are effective when they are likely to "spur [a party] to resume actively litigating th[e] case."  Jit Shi Goh v. Coco Asian Cuisine, Inc., 2018 WL 7412833, at *3 (D.N.J. July 23, 2018), report and recommendation adopted, 2019 WL 861374 (D.N.J. Feb. 22, 2019).

But the Opt-In Plaintiffs have failed to respond to their Lawyers' communications, to the Lawyers' motions to withdraw, and to the instant motions to dismiss them from the case.  The Opt-In Plaintiffs have also not responded to direct communications from the Court.

There is no "plausible reason" to think a sanction such as a fine would cause them to become active in this case.  See id.; see generally Briscoe, 538 F.3d at 262-63 ("[W]here a plaintiff is proceeding pro se, . . . we have upheld the District Court's conclusion that no alternative sanctions existed because monetary sanctions, including attorney's fees, would not be an effective alternative.") (cleaned up); see also Riley v. Sec'y Pa. Dep't of Corr., 536 F. App'x 222, 226 (3d Cir. 2013); Young v. Somerset Cnty. Jail, 515 F. App'x 107, 109 (3d Cir. 2013); Karpiel v. Ogg, Cordes, Murphy & Ignelzi, L.L.P., The Firm, 405 F. App'x 592, 596 (3d Cir. 2010); Clarke v. Nicholson, 153 F. App'x 69, 73 (3d Cir. 2005).[20]

---

[20]  Some additional cases: Bernabe, 2007 WL 4573873, at *6 (alternative sanctions would be ineffective where "the missing [opt-in] plaintiffs have been given clear warnings that their

"[O]utside of dismissal of the action, the Court cannot envision a sanction that would be appropriate." Briscoe, 538 F.3d at 262. This factor therefore weighs in favor of dismissal.

**F.   Meritoriousness of the Claims**

The sixth and final Poulis factor is meritoriousness of the claim. See Adams, 29 F.3d at 876.

"[I]n determining whether a plaintiff's claim is meritorious, [courts] use the standard for a Rule 12(b)(6) motion to dismiss for failure to state a claim." Briscoe, 538 F.3d at 263. Thus, the Court deems "[a] claim, or defense . . . meritorious when the allegations of the pleadings, if established at trial, would support recovery by plaintiff[.]" Id.; see also Adams, 29 F.3d at 876-77.

Here, it is difficult to evaluate this factor. There is little doubt that some of the Plaintiffs have meritorious claims. They have, as noted, struck a proposed settlement agreement with the Defendant.

But whether some or all of the Opt-In Plaintiffs also have meritorious claims is difficult to meaningfully evaluate, given the Opt-In Plaintiffs non-participation in discovery. See Porten v. Auto Zone, 2011 WL 2038742 at *3 (D.N.J. May 24, 2011); ("Plaintiff's failure to engage in discovery or respond to Defendant's motion to dismiss hampers the Court's ability to assess the merit of her claims."); Devito v. C.M.S. Dep't, 2006 WL 756014, *3 (D.N.J. Mar. 17, 2006) ("Plaintiff's disregard of Defendants' interrogatories and motions to dismiss renders this Court unable to ascertain the meritoriousness of his claim.").

This factor is, therefore, neutral. It does not change the equation. Cf. Duda v. Rentokil N. Am., Inc., 2020 WL 1227526, at *4-5 (D.N.J. Mar. 12, 2020) ("a plaintiff's meritorious claim will not override a finding that the other [five] [Poulis] factors favor of dismissal") (citing Hoffman v. Palace Entertainment, 621 F. App'x 112, 115-16 (3rd Cir. 2015));

---

failure to respond could result in dismissal"); Williams, 2008 WL 2074039, at *1 (alternative sanctions would be ineffective "[g]iven that these plaintiffs' only noted participation in this litigation has been to file the . . . opt-in form"); Roseman, 2017 WL 1287138, at *5 (alternative sanctions would be ineffective where counsel spent a year attempting to contact opt-in plaintiffs without success).

accord, e.g., Opta Systems, LLC v. Daewoo Elecs. Am., 483 F. Supp. 2d. 400, 405-06 (D.N.J. 2007).

**V.   Conclusion and Next Steps**

The five Opt-In Plaintiffs joined this lawsuit over a year ago. See Part I.

But for virtually this entire period, they have not meaningfully participated in the case.  They have not stayed in touch with their (now-former) Lawyers, in spite of the Lawyers' apparent efforts.  They did not appear for their scheduled depositions, they did not complete interrogatories, and they did not produce documents.  See Part II.

In short, the Opt-In Plaintiffs have failed to prosecute their claims, see Part III.A, and most of the Poulis factors line up in favor of the Court dismissing the Opt-In Plaintiffs from this case.  See Part III.B.

The Court, though, will not now do so.

Notifying plaintiffs that their claim may be dismissed is not required by Poulis, or by the analogous tests that have been articulated by other Courts of Appeals.  See Almara Sepanian, Cleaning House with Rule 41(b): An Empirical Study of the Multi-Factor Tests for Involuntary Dismissals, 44 Sw. L. Rev. 411, 412-13, 435 (2014) ("[N]either the Supreme Court nor the circuit courts require warnings or notice before dismissal[.]") (cleaned up).

But District Courts throughout the Nation frequently notify plaintiffs that their claims are about to be dismissed before taking that final step.  See id.

This makes sense.  A plaintiff's claim belongs to the plaintiff, for handling how they want.  But there is little reason for the Court not to try to ensure the plaintiff's choice is an informed one, at least when a severe outcome (dismissal) is looming just around the corner.  Absent unusual circumstances, basic fairness favors telling a pro se plaintiff that their claim is on the verge of being extinguished before it is.  This is true when a plaintiff's case may be dismissed because of a lawyer's actions. See Adams, 29 F.3d at 872 (suggesting as much); Link, 370 U.S. at 643 (Black, J., dissenting) (same).  And it is true here, as well --- where it is the plaintiffs' own actions that have pushed them to the edge of being dismissed from the case.

Against this backdrop, the Court will direct the Clerk of Court to send today each of the Opt-In Plaintiffs the Order attached as Appendix B, as well as this Opinion and Order.

If there is no response from any given Opt-In Plaintiff on or before January 10, 2024, 30 days from today, that Opt-In Plaintiff will be dismissed with prejudice from this case.

It is on this 11th day of December, 2023 SO ORDERED.

Michael E. Farbiarz, U.S.D.J.

Appendix A

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| BRIAN RUSSO, et al.,<br><br>               *Plaintiffs,*<br><br>    v.<br><br>GOVERNMENT EMPLOYEES INSURANCE COMPANY,<br><br>               *Defendant.* | Civil Action No. 21-cv-17234(MEF)(JBC)<br><br><br>**ORDER** |

I am the United States District Judge overseeing the case of Brian Russo, et al. v. Government Employees Insurance Company ("GEICO"), Civil Action No. 21-cv-17234, in the District of New Jersey.

This Order is directed at five people: Daniel Paul Capilla Amy Paz, Scott Hall, Lewis Schepacarter, and Blondine Ladouceur.

Each of you is listed as a Plaintiff in this case.

There has been a motion made to dismiss you from the case.

The basis for the motion is a suggestion that you have failed to appropriately participate in the case.  It is possible the motion will be granted.  If the motion is granted, **you will be dismissed from the case**.

If you have any interest at all in remaining in the case, you are hereby directed to call the Court's Clerk's office at 973-645-3730 by November 10, 2023 at 10:00am or to file a letter on the docket of this case by then.

1

The Clerk's office is hereby directed to send this order to the last-known addresses of each of the five Plaintiffs listed above, via overnight, certified mail.

It is on this 3rd day of November, 2023, SO ORDERED.

_____

Michael E. Farbiarz, U.S.D.J.

2

Appendix B

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

BRIAN RUSSO, et al.,

    *Plaintiffs*,

 v.

GOVERNMENT EMPLOYEES INSURANCE
COMPANY,

    *Defendant*.

Civil Action No. 21-cv-
17234(MEF)(JBC)

**ORDER**

I am the United States District Judge overseeing the case of
Brian Russo, et al. v. Government Employees Insurance Company,
Civil Action No. 21-cv-17234, in the District of New Jersey.

This Order is directed at five people: Daniel Paul Capilla
Amy Paz, Scott Hall, Lewis Schepacarter, and Blondine Ladouceur.

Each of you is listed as a Plaintiff in this case.

There has been a motion made to dismiss you from the case.

The basis for the motion is a suggestion that you have failed to
appropriately participate in the case.

I have written an opinion that explains that the Court intends
to grant the motion and to dismiss you from the case.  The
Court's dismissal will be with prejudice.  The Court's opinion
is attached.  It is not final, but it will soon become final and
you will be dismissed from the case if I do not hear from you by
January 10, 2024.

If you have any interest in responding to the motion, objecting
to the Court's opinion, supplying relevant information, or
remaining in the case, you are hereby directed to call the

Court's Clerk's office at 973-645-3730 or to file a letter on the docket of this case.  You must take any such steps by January 10, 2024 at 5:00pm.

**If you do not reach out by then, you will be dismissed with prejudice from this case.**

The Clerk's office is hereby directed to send to the last-known addresses of each of the five Plaintiffs listed above, via certified mail, (1) this Order and (2) the Court's Opinion and Order of today.

It is on this 11th day of December, 2023, SO ORDERED.

Michael E. Farbiarz, U.S.D.J.