IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BRIAN RUSSO, and similarly situated individuals,<br><br>      Plaintiff,<br><br>      v.<br><br>GOVERNMENT EMPLOYEES INSURANCE COMPANY D/B/A GEICO,<br><br>      Defendant. | C.A. No.: 2:21-cv-17234-MEF-JBC |

**JOINT SECOND MOTION TO APPROVE
FAIR LABOR STANDARDS ACT SETTLEMENT**

The Parties jointly move for approval of the Settlement Agreement with respect to the five (5) Plaintiffs in this case and, in support of this Motion, state as follows:

The Parties reached an overall Settlement Agreement covering five (5) Fair Labor Standards Act ("FLSA") Collective Actions. *See* Settlement Agreement attached hereto as Exhibit 1. In addition to this case, the Agreement covered:

 *Erford v. Government Employees Insurance Company*, United States District Court for the Eastern District of North Carolina, Civil No. 5:21-cv-00314-M.

 *Hart v. Government Employees Insurance Company*, United States District Court for the Middle District of Pennsylvania, Civil No. 4:21-cv-00859-MWB. ("the *Hart* Matter")

 *Schwarzmann v. Government Employees Insurance Company*, United States District Court for the Northern District of Ohio, Civil No. 1:21-cv-02270-PAB.

 *Zambito v. Government Employees Insurance Company*, United States District Court for the Middle District of Florida, Civil No. 8:21-cv-02223-MSS-SPF.

Because most (but not all) courts hold that FLSA releases are not effective absent Department of Labor or Court approval, the Parties filed identical motions for approval in the cases listed above. All the settlements were approved by the respective courts, except for this one. In this case, the Court denied approval, with instructions to address the evidence, the basis for the settlement, and the amount of fees. Doc. 92.

## STATEMENT OF FACTS

### A.      Plaintiffs were represented by capable counsel.

The Plaintiffs are Auto Damage Adjusters who allege that they worked off the clock for GEICO. Lead counsel in all the cases is Zipin, Amster & Greenberg, LLC, a Maryland firm with extensive experience in FLSA cases. The firm has litigated hundreds of FLSA cases. It was successful in obtaining conditional certification of the collectives in all five (5) cases.

### B.      The settlement was reached in an adversarial context.

There were ninety-one (91) named and opt-in Plaintiffs in all cases combined. In two of the cases, *Hart* and this one, discovery was complete. In those two (2) cases, Plaintiffs took extensive discovery concerning GEICO policies, practices, and records. This included an exchange of Interrogatory Answers, production of paper and electronic documents, and multiple Party and witness depositions.

The Settlement Agreement is the result of protracted and hard arm's length bargaining. In the *Hart* case, an unsuccessful mediation was conducted on August 22, 2022, by Magistrate Judge Karoline Mehalchick, of the Middle District of Pennsylvania. Later, the parties retained retired Federal Judge Alexander Williams, formerly of the District of Maryland, to mediate all five (5) cases. That mediation, held January 10, 2023, also was unsuccessful.

Ultimately, counsel for the parties negotiated the settlement in an in-person meeting

2

and a series of follow up telephone calls and emails. During these negotiations, Plaintiffs' counsel obtained express and voluntary settlement authority from each named Plaintiff and each individual opt-in Plaintiff.

### C. The settlement is a reasonable compromise of disputed issues.

The agreement reached is a reasonable compromise of highly disputed claims. It is undisputed that Plaintiffs' primary duty was to write estimates on damaged vehicles. They inspected vehicles in the field, at body shops and at home. They worked outside the presence of their supervisors and recorded their own time in the Company's timekeeping system, called Workday. They reported and were paid for different amounts of overtime.

The disputed issues concerned Plaintiffs' claim that they did not report nor did GEICO pay them for *all* their overtime. Plaintiffs asserted they did not record all their time because their managers told them not to and/or doing so would adversely affect their productivity rating, which is one part of their performance evaluation. In defense, GEICO asserted that Plaintiffs were instructed to report their time accurately, that no one told them to work off-the-clock, and that they reported and were paid for significant amounts of overtime.

Both legal precedent and the factual record created risks that the Plaintiffs would not prevail. With respect to the precedent, GEICO made the following legal argument why it should not be liable for unrecorded time.

### D. GEICO's Legal Position

GEICO submitted that "where the acts of an employee prevent an employer from acquiring knowledge, here of alleged uncompensated overtime hours, the employer cannot be said to have suffered or permitted the employee to work in violation of § 207(a)." *Forrester v. Roth's I. G. A. Foodliner, Inc.*, 646 F.2d 413, 414-15 (9th Cir. 1981). "Under the FLSA, if an employer

establishes a reasonable process for an employee to report uncompensated work time the employer is not liable for non-payment if the employee fails to follow the established process." *White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 876 (6th Cir. 2012). Indeed, "an employee cannot undermine his employer's efforts to comply with the FLSA by consciously omitting overtime hours for which he knew he could be paid." *Wood v. Mid-America Mgmt. Corp.*, 192 Fed. Appx. 378, 380-81 (6th Cir. 2006). "When the employee fails to follow reasonable time reporting procedures, she prevents the employer from knowing its obligation to compensate the employee and thwarts the employer's ability to comply with the FLSA." *Id.*

GEICO further submitted that the record further shows that all the Plaintiffs recorded overtime, in varying amounts, for which they were paid, with no adverse consequences. This raises the question, if Plaintiffs recorded some of their overtime, how would their supervisor know that they are not reporting other overtime? *Wood*, 192 Fed. Appx. at 81 ("Because Wood did report some overtime and because he reported any time he was called to work through the answering service (which generated a record of the call) Mid-America had no reason to suspect that he neglected to report other overtime hours.").

GEICO also took the position that Plaintiffs cannot rely on GEICO's electronic records, such as claims files, emails, and phone records, to show GEICO's knowledge. The FLSA does not require employers to analyze electronic data to see if employees are working overtime. *Allen v. City of Chicago*, 865 F.3d 936, 943 (7th Cir. 2017) (rejecting argument that "constructive knowledge should be found whenever the employer could have known about uncompensated work through, for example, examining all its records."). Accord, *Fairchild v. All Am. Check Cashing, In*c., 815 F.3d 959, 965 (5th Cir. 2016); *Hertz v. Woodbury Cty., Iowa*, 566 F.3d 775, 782 (8th Cir.

4

2009); *Newton v. City of Henderson*, 47 F.3d 746, 749 (5th Cir. 1995); U.S. Department of Labor, Wage Hour Division, *Field Assistance Bulletin No. 2020-5* (Aug. 24, 2020).

Finally, GEICO argued, there is not even isolated anecdotal evidence that supports the claim of actual or constructive knowledge. Even if there were, it would not be sufficient to support a Collective Action. *Reinig v. RBS Citizens*, 2022 WL 2680098 (W.D. Pa. 2022) aptly describes Plaintiffs' burden. Assertions that management "must have known" about the unreported overtime, coupled with examples of individual plaintiffs "voicing concerns about their hours at particular times and to particular managers" do "not permit the general inference that Citizens had constructive knowledge that the class as whole was working off the clock." *Id.* at *8.

> Even assuming that some managers, in some places, at discrete times within the class period, had actual or constructive knowledge that an individual MLO [mortgage loan officer] worked some off-the-clock hours, no generalized inference as to what Citizens knew or should have known about other MLOs, who reported to other PSMs [producing sales managers] at different places, and at times within the class period, can be drawn.

*Id.* The court went on to point out that, as here, the plaintiffs typically communicated with their supervisors by phone or email, contract with their supervisors was limited to a few hours per week at most, and that supervisors had no way of knowing their actual schedule and hours except as reported by the plaintiffs. *Id.*

**Deposition testimony supporting the defense**.

In GEICO's view, the following deposition testimony shows why there was a substantial risk that Plaintiffs would not prevail:

**Russo**

Despite Russo's testimony that he did not typically take a lunch, numerous emails showed he was out for lunch or taking a lunch. Ex. 2, Russo Dep. 201:18-25; Ex. 3, Exhibits 45-48 of Russo Dep. Further, Russo admitted that he was able to report overtime even in instances where

5

he had <u>not</u> obtained approval prior to working that time. Ex. 2, Russo Dep. 127:7-16, 151:3-14. Finally, Russo had serious credibility issues. Russo was terminated for suspected fraud. ECF No. 21-6, Kang Decl., Ex. 5 [Edwards Aff.] ¶ 6. He pled guilty to forgery theft in 1997. Ex. 2, Russo Dep. 34:8-12. Russo testified that he "worked at a bank in which [he] wrote a few fake . . . forged a couple savings and withdraws slips and cashed them." *Id.* 35:7-10.

**Sayaman**

Sayaman testified that no one at GEICO told him not to report his hours accurately. Ex. 4, Sayaman Dep. 57:4-15. Sayaman is not claiming that he worked any overtime while he was a virtual adjuster during COVID-19 from April 2020 until the end of July 2020 or August 2020. *Id.* 24:11-15, 91:17-23. Further, Sayaman could not recall whether he took lunch while working from home and whether he performed any work during those lunches. *Id.* 89:8-90:12.

**Lawrence**

Lawence testified that he sometimes took his lunch breaks. Ex. 5, Lawrence Dep. 116:5-7. Lawrence further admitted that no one at GEICO told him not to report his time correctly, to work off the clock, or that he could not claim the hours he worked in the timekeeping system. *Id.* 125:1-17. Lawrence conceded that GEICO would not have known that he worked overtime if he did not report the time. *Id.* 124:23-25.

**Smith**

Smith testified that from March to October 2020 he took his lunch breaks. Ex. 6, Smith Dep. 64:17-19, 65:7-10. Smith testified that he understood he had to certify the accuracy of his timesheet each week, however, despite this certification his hours were not correct. *Id.* 40:19-41:1, 92:4-8. Moreover, Smith received explicit emails inviting adjusters to work and report overtime, Smith testified that he did not report overtime. *Id.* 88:3-90:2, 98:4-23, 105:19-106:6.

**Carducci**

Carducci testified that he understood that he was entitled to a 45-minute lunch break. Ex. 7, Carducci Dep. 48:10-16. Further, Carducci conceded that no supervisor or manager instructed him not to record overtime and he was instructed to record all of his hours worked. *Id.* 56:4-19, 79:17-23.

### E.       The settlement

Plaintiffs disagree with GEICO's view of the law or the testimony, as outlined above. However, they do agree that there was litigation risk on both sides, and that the settlement reached, with the Plaintiffs' knowledge and consent, is a reasonable compromise of the competing views. Plaintiffs, moreover, recognized that notwithstanding their contention that GEICO suffered or permitted Plaintiffs' off-the-clock work, the extent of alleged back wages owed to each Plaintiff was at best, uncertain. Plaintiffs do not have contemporaneous time records showing how much unrecorded time they worked on any particular day.

The Parties also agree that even if FLSA liability were found, the facts of this case do not likely support a factual finding that GEICO's alleged violation of the FLSA was willful. As such, the Parties agree the standard two-year non-willful FLSA statutory recovery period, relating back two-years from Russo's filing of the Complaint as to Russo and two-years back from the date each Opt-In Plaintiff submitted his FLSA Opt-In Consent Form, is the proper period from which to measure Plaintiffs' claims for FLSA recovery in this matter.

Ultimately, the Parties agreed that settlement was in all Parties' best interest. Absent settlement, the cases would have resulted in substantially more litigation and delay in resolution. At the close of discovery, GEICO intended to move for decertification of the collective actions and GEICO and Plaintiffs intended to move for summary judgment and/or partial summary

judgment on the issue of liability. If not resolved at those stages, in addition to the underlying and inherent litigation risks, the cases could have gone on to trial and appeals.

### F. The allocation formula

To determine each Plaintiff's share of the total payment in all five (5) cases, each Plaintiff was assigned a bracket based on length of service within the limitations period. Plaintiffs' counsel discussed the amount with every Plaintiff and obtained express authorization from each Plaintiff to settle in exchange for receipt of the payment assigned or allocated to each Plaintiff as set forth in the Settlement Agreement.

Using length of service to allocate overall settlements in FLSA collective actions is standard operating procedure in FLSA cases. *See e.g., Taylor v. Fedex Freight, Inc*., 2016 WL 6038949 * 4 (E.D. Cal 2016); *Enegren v. KC Lodge Ventures*, 2019 WL 5102177 (D. Kan. 2019). In the absence of records or even reliable memories concerning the dates and amounts of overtime records, it is the only ascertainable method of dividing the settlement. The Plaintiffs' pay rates were not sufficiently different to warrant factoring them into the allocation.

In addition, Lead Plaintiffs Susan Hart, Candace Erford, Timothy Schwarzmann, Brian Russo, and Ryan Zambito's individual settlement recoveries include a modest service award of Five Thousand Dollars ($5,000.00) for their efforts to initiate the case, participate in discovery and represent the opt-in Plaintiffs, and in exchange for their releases.

### G. The attorneys' fees and costs are appropriate.

The Parties negotiated GEICO's payment of attorney's fees and litigation costs through arms-length agreement after the Parties reached an underlying agreement as to the settlement sum payable to the Plaintiffs. Plaintiffs' counsel represented Plaintiffs on a contingency basis wherein Plaintiffs' counsel's fees would the higher 40% of the gross settlement or Plaintiffs' counsel's

8

lodestar. However, rather than claim a percentage fee or the full lodestar, Plaintiffs' counsel elected to negotiate payment of Plaintiffs' counsel's fees and costs directly with GEICO. To ensure that each Plaintiff and opt-in Plaintiff received a fair and reasonable settlement recovery in an amount he or she authorized, Plaintiffs' counsel agreed to a fee and cost recovery substantially less than Plaintiffs' counsel's actual lodestar recovery.

Under the lodestar formula, "courts 'multiply[] the number of hours reasonably expended by a reasonable hourly rate.' *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 177 (3d Cir. 2011). *Id.* Plaintiffs' counsel has proffered contemporaneously recorded billing statements with Plaintiffs' counsel's declarations identifying the name, experience, and customary billing rate for each biller and affirming the necessity and reasonableness of each proffered billing entry.

Ultimately, Plaintiffs' counsel's total lodestar in this case resulted in total actual attorney's fees and litigation expenses incurred in the amount of One Hundred Seven Thousand Two Hundred Sixty-One Dollars and Forty-Three Cents ($107,261.43). *See* Ex. 8, Greenberg Declaration; *see also* Ex. 9, Glenn Declaration. In recognition of the risks associated with further litigation of this matter, and in light of the fact that Plaintiffs accepted a reduced recovery in favor of individually allocated settlement recoveries described above, to reach settlement, Plaintiffs' counsel agreed to accept a reduced attorney fee recovery of Sixty-One Thousand Five Hundred Fifty Dollars and Zero Cents ($61,550.00) and a reduced litigation expense reimbursement in the amount of Fifteen Thousand Nine Hundred Fifty Dollars and Zero Cents ($15,950.00). *See* Ex. 8, Greenberg Declaration; *see also* Ex. 9 Glenn Declaration.

## ARGUMENT

### A. The settlement was fair and reasonable.

There is a strong public policy in favor of settlements. *Lei v. Genesis Spa*, 2022 WL

19703397 *1 (D.N.J. 2022) (Waldor, M.J.), *citing Farris v. J.C. Penney Co.*, 176 F.3d 706, 711 (3d Cir. 1999). The standards for approval of a FLSA settlement were reviewed in *Beltran v. JP Management LLC*, 2023 WL 8716886 (D.N.J. 2023) (Waldor, M.J.), *approved*, 2023 WL 8716885 (D.N.J. 2023) (Farbiarz, J.). According to *Beltran*,

> In determining whether a compromise is fair and reasonable, courts in this Circuit consider both (1) whether the compromise is fair and reasonable to the employee, and (2) whether the compromise otherwise frustrates the implementation of the FLSA." *Gabrielyan v. S.O. Rose Apts. LLC*, 2015 U.S. Dist. LEXIS 135615, at *3-4 (D.N.J. Oct. 5, 2015) (citing cases). Approval of FLSA settlements thus entails a three-part analysis: "First, the court must determine that the settlement concerns a bona fide dispute. Second, the court must determine that the settlement is fair and reasonable to the Plaintiff-employee. And, third, the court must determine that the agreement does not frustrate the implementation of the FLSA in the workplace." *Id.* at *4.

A *bona fide* dispute exists when parties genuinely disagree about the merits of an FLSA claim—when there is factual rather than legal doubt about whether the plaintiff would succeed at trial." *Cruz v. JMC Holdings, Ltd.*, 2019 U.S. Dist. LEXIS 169071, at *10 (D.N.J. 2019) (quoting *Haley v. Bell-Mark Techs. Corp.*, 2019 U.S. Dist. LEXIS 72365, 2019 WL 1925116, at *4 (M.D. Pa. 2019)). *Also Vidal v. Paterson Car Emporium LLC*, 2023 U.S. Dist. LEXIS 8482, at *5 (D.N.J. 2023) ("In light of the stark contrast between the parties' factual positions, the Court finds that their dispute is bona fide.").

In assessing whether an FLSA settlement is fair and reasonable to a plaintiff, courts in this circuit often invoke the following non-exhaustive list of factors set forth by the Third Circuit in *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975):

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

These factors "are a guide and the absence of one or more does not automatically render the settlement unfair." *Alves v. Main*, 2012 U.S. Dist. LEXIS 171773, at *31 (D.N.J. 2012) (citing *In re American Family Enters.*, 256 B.R. 377, 418 (D.N.J. 2000)). Accordingly, "the Court must look at all the circumstances of the case and determine whether the settlement is within the range of reasonableness." *Id.* (citing *In re AT&T Corp. Secs. Litig.*, 455 F.3d 160 (3d Cir. 2006)).

The Court considers collectively the first, third, fourth, and fifth factors. As explained by the Third Circuit in *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995), the first factor is meant to encapsulate "the probable costs, in both time and money, of continued litigation." The third asks courts to "determine whether counsel had an adequate appreciation of the merits of the case before negotiating." Through the fourth, "[b]y evaluating the risks of establishing liability, the district court can examine what the potential rewards (or downside) of litigation might have been had ... counsel elected to litigate the claims rather than settle them." Similarly, the fifth factor "attempts to measure the expected value of litigating the action rather than settling it at the current time." *See id.* at 812-16 (citations omitted).

Here, the *Girsh* factors favor approval of the Parties' Settlement Agreement. The Parties reached their Settlement Agreement after extensive discovery in this and companion cases. The Parties' full participation in the discovery process amply provided all Parties with an opportunity to evaluate the evidentiary and legal support for Plaintiffs' FLSA claims, GEICO's legal and factual defenses thereto. *Id.* The Parties recognize that continued litigation would be risky, with Plaintiffs running the risk of delayed recovery, monetary recovery less than each Plaintiff's individual recovery under the Settlement, or a defense verdict in favor of GEICO resulting in no recovery and an obligation to reimburse GEICO's taxable and recoverable litigation costs. *Id.* Further, the Parties understood that irrespective of the litigation outcome, continued litigation

would certainly entail expenditure of time, costs, and energy by both sides. *Id*. For this reason, following an ongoing arms-length settlement negotiation, GEICO presented each Plaintiff with the individually allocated settlement offer attached to the Settlement Agreement and each Plaintiff, with the counsel and advice of Plaintiffs' undersigned counsel, freely, voluntarily, and expressly accepted the amount as the individual benefit of the same outweighed the inherent risk, time, costs, distraction, and energy of continued litigation. *Id*.

### B. The attorneys' and costs are fair and reasonable.

In the Third Circuit, courts evaluate whether an attorney's fee is reasonable through the lodestar formula. *See Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 177 (3d Cir. 2011). Under the lodestar formula, "courts 'multiply[] the number of hours reasonably expended by a reasonable hourly rate.'" *Id.* The lodestar approach confirms the attorney's fees and litigation cost is reasonable under the circumstances of this case. Here, Plaintiffs' counsel's time in this matter reflects the realities of the Parties' lengthy and hard-fought litigation of the above-described *bona fide* disputes in this matter and negotiations that culminated in the Parties' Settlement. Plaintiffs' counsel has proffered contemporaneously recorded billing statements with Plaintiffs' counsel's declarations identifying the name, experience, and customary billing rate for each biller and affirming the necessity and reasonableness of each proffered billing entry. Further, the customary billing rates for Plaintiffs' counsel are reasonably in line with or slightly reduced from attorney billing rates that have been found reasonable by Courts in this District. *See Santiago v. Lucky Lodi Buffet Inc.*, 2016 U.S. Dist. LEXIS 146089, at *4 (D.N.J. 2016) (approving hourly rate of $450.00 for billing by the partner attorney and $375 for associate with four years of employment law experience).

In sum, Plaintiffs' counsel's attorney's fees and cost recovery set forth in the Settlement

Agreement (i) was negotiated separate and apart from each Plaintiff's individually allocated settlement recovery; (ii) does not detract from or reduce any Plaintiff's individually allocated settlement recovery; and (iii) the total amount of Plaintiffs' attorney's fees and cost recovery is notably less than Plaintiffs' counsel's lodestar in this matter, Plaintiffs request this Court accept the Settlement Agreement's attorney's fee and cost allocation as fair and reasonable. *See* Ex. 8, Greenberg Declaration; *see also* Ex. 9, Glenn Declaration.

    **C.**    **The Agreement does not contain improper terms.**

The Third Circuit has found problematic restrictive confidentiality clauses and overly broad releases. *Beltran*, 2023 WL 8716886 at *3. The Settlement in this does not contain a confidentiality clause and the release for opt-in Plaintiffs is limited to wage-hour claims. In exchange for a service award, only the lead Plaintiff Russo has agreed to a general release. Russo's general release is not problematic because (1) the statute of limitations has run on any other claims Russo may have had against GEICO (he was terminated April 5, 2021); (2) he received additional consideration for the release and (3) judicial approval of non-FLSA releases is not required.

## CONCLUSION

For the foregoing reasons, the parties jointly request that the Court approve the attached settlement agreement and order that the case be dismissed with prejudice. A proposed order is submitted herewith.

Respectfully Submitted,

*s/ Andrew I. Glenn*
Andrew I. Glenn
JAFFE GLENN LAW GROUP, P.A.
300 Carnegie Center, Suite 150
Princeton, NJ 08540
Telephone: (201) 687-9977
Facsimile: (201) 595-0308

13

AGlenn@JaffeGlenn.com

Gregg C. Greenberg (*pro hac vice*) Thomas J. Eiler (*pro hac vice*) Zipin, Amster & Greenberg, LLC 8757 Georgia Avenue, Suite 400 Silver Spring, Maryland 20910
Telephone: (301) 587-9373
Facsimile: (240) 839-9142
ggreenberg@zagfirm.com
teiler@zagfirm.com

*Attorneys for named Plaintiff and Putative Class*


*s/ Gene Y. Kang*
Gene Y. Kang
**RIVKIN RADLER LLP**
25 Main Street, Suite 501 Court Plaza North
Hackensack, New Jersey 07601 (201) 287-2460
gene.kang@rivkin.com

14

Eric Hemmendinger (*pro hac vice*) Lindsey A. White (*pro hac vice*) Paul D. Burgin (*pro hac vice*) **SHAWE ROSENTHAL LLP**
One South Street Suite 1800
Baltimore, MD 21202
(410) 752-1040
eh@shawe.com
law@shawe.com
pdb@shawe.com

*Attorneys for Defendant Government Employees Insurance Company d/b/a GEICO*